Claire Craig OGLESBY, Appellant,

v.

George E. ALLEN, Successor, Trustee,
Appellee.

No. 26107.

United States Court of Appeals
Fifth Circuit.

March 17, 1969.

L. Robert Frank, Tampa, Fla., Thomas F. Tivnan, New York City, Allen, Dell, Frank & Trinkle, Tampa, Fla., and Parker, Duryee, Zunino, Malone & Carter, New York City, for appellant.

George E. Allen, Allen, Knudsen, Swartz, Richardson & DeBoest, Fort Myers, Fla., for appellee.

Before THORNBERRY and DYER, Circuit Judges, and KEADY, District Judge.

KEADY, District Judge:

On November 24, 1961, appellant, Claire Craig Oglesby, majority shareholder of Travel, Inc., and representatives of Tower Acceptance Corporation consummated an agreement whereby appellant would exchange 100 shares of Travel, Inc., stock for 9000 shares of that of Tower.[1] Paragraphs 5(e) and 10 of that contract, the principal points of focus on this appeal, provide as follows:

"5(e). Tower, at the present time, is planning for a registration of its stock during the month of January, 1962, with the Securities and Exchange Commission. If this registration takes place as contemplated, all of the capital stock to be delivered under this agreement will be included in such registration. If, however, for any reason beyond the control of Tower, the registration does not take place during January, then the said stock involved in this agreement will be registered at the first available registration date for Tower."

"10. Transfer of Shares: The Stockholder represents and agrees that she is not acquiring the shares of stock hereunder with a view to public distribution and that she will not transfer, resell or distribute any such shares except in a transaction not involving a public distribution to a person or persons who agree to be bound by this agreement, or by way of gift, or in trust, to or for members of her family or for charitable purposes, unless a Registration Statement under the Securities Act of 1933, as amended, shall be in effect as to such shares, or, in the opinion of counsel for Tower, an exemption from registration is applicable to the proposed transaction."

Pursuant to an informal amended agreement,[2] Tower, in December 1961, accepted all the assets and liabilities of Travel, Inc., in lieu of the shares of stock for which it had originally contracted. Thus, by January 1962, appellant had performed her part of the contract, but it was not until October 11, 1962, that Tower first delivered to appellant unregistered stock containing an investment legend restricting its transferability, despite frequent requests from appellant that the shares be delivered. Appellant, however, upon examination of the stock, refused to accept it because it was not registered and because of the transferability restriction, and immediately returned it to Tower. Finally, on March 20, 1963, Tower delivered to appellant stock without an investment legend. At no time, however, was the Tower stock registered with the Securities and Exchange Commission.[3] Despite the fact that the stock was not registered, appel-

1. The agreement provided that appellant would be issued 8730 shares, Everard G. Delgado 180 shares, and John Mizik, Jr. 90 shares.

2. On approximately December 1, 1961, the equipment and personnel of Travel, Inc., were physically transferred across the street to the office of Fugazy Travel, a subsidiary of Tower, and some of Fugazy's employees were absorbed into the new operation. No written conveyance was ever executed, but the parties apparently ratified the informal amendment by their conduct. Appellant advised her bank and all clients of Travel, Inc. of the merger.

3. It appears from the record developed before the Referee that Tower attempted to file a registration with the S.E.C., but did not do so because, as Tower's attorney stated, " * * * the books of the travel agency was so messy, particularly the Fugazy Agency, that the auditor could not put together a statement necessary, or the figures necessary, for him to make a proper registration statement."

lant effected a sale of 8,730 shares thereof on the open market on March 21, 1963, for a gross price of $30,567.50.

Upon the filing of a petition for reorganization of Tower, Inc., by its creditors, appellant filed a claim in the proceedings, alleging that she was entitled to registered Tower Acceptance stock in January 1962, and demanded the sum of $75,182.50,[4] the difference between the alleged open market price of the stock at that time and that prevailing on March 20, 1963, when she actually received it. She now appeals from an Order of the District Court affirming in all respects the Order of the Referee in Bankruptcy disallowing the claim.

The threshold questions presented on this appeal are:

(1) Whether appellant was entitled under the provisions of the contract of November 24, 1961, to receive 9000 shares of Tower stock registered with the Securities and Exchange Commission, and, if not, whether the district court and the Referee in Bankruptcy improperly refused to follow the parol evidence admitted by the Referee in contradiction with the terms of that contract; and

(2) Whether the District Court erred in failing to consider appellant's claim that she was damaged by the late delivery of the Tower stock, regardless of whether it was registered with the Securities and Exchange Commission.

■ Although the Referee allowed the introduction of parol evidence bearing on the parties' intent,[5] he found specifically that "the contract of November 24, 1961, was entered into between the parties after careful negotiation and such contract is not ambiguous." We think this is certainly not erroneous in light of the contract provisions that Tower, at the time of contracting, was merely "planning" a registration of its stock and that appellant was "not acquiring the shares of stock * * * with a view to public distribution." Under either the law of Florida, Ramey v. Koons, 230 F.2d 802 (5 Cir. 1956), or that of New York, R.F.C. v. Commercial Union of America Corp., 123 F.Supp. 748 (S.D.N.Y.1954), the state where the contract was alleged to have been performed, the contents of a contract which has been reduced to writing, and is evidenced by a document may not be varied or contradicted by extrinsic evidence unless the terms of the contract are ambiguous. Neither the Referee nor the District Court erred in refusing to consider the parol evidence, introduced to contradict the terms of the contract.

---

4. The price range of the stock in question fluctuated between 10¼ and 11¾ per share in December 1961 and January 1962. Thus, appellant calculated her damages as follows:

| | |
|---|---|
| 9000 shares of Tower stock at 11¾ | $105,750.00 |
| Gross sale of stock on March 21, 1967 | 30,567.50 |
| Damages claimed | $ 75,182.50 |

---

5. The testimony is undisputed that appellant, in all preliminary negotiations insisted upon receiving registered stock. With respect to the meeting of November 21, 1961, the last conference before the contract was signed, the attorney for Tower testified before the Referee that " * * * the discussion centered around the desire of Mrs. Oglesby to have in the contract a provision that she would receive registered stock * * * ", and that "she wanted a commitment for registration; which I said I wouldn't give her." Appellant testified that in February 1962, she made demand upon William D. Fugazy, a member of the Board of Directors of Tower and one of the chief negotiators of the stock exchange agreement, for registered stock and that he replied that the stock was in the process of being registered and the details would be worked out shortly.

■ The Referee in Bankruptcy viewed the "sole question" presented before him as whether or not appellant was entitled to receive registered stock of Tower Acceptance Corporation, and, therefore, did not consider appellant's additional claim that she was damaged by its late delivery. Although we are constrained to reverse for failure of the Referee to rule upon this issue, we now define the proper elements of damages to be considered on remand.

■■ First, appellant is not entitled to gauge her damages by market price differential, since the controlling agreement precluded her from selling the stock on the open market. The term "market value" as applied to corporate stock necessarily connotes its value in an active, open market. See e. g., Lamprecht v. Swiss Oil Corporation, 35 F.2d 646 (6 Cir. 1929). Even assuming, arguendo, the validity of "a private market value" standard, she would be entitled, at most, to the difference between the January 1962 price and that prevailing when she received the shares on October 11, 1962, *with the investment legend attached.* The market would have to be made by buyers willing to be bound by the provisions of ¶ 10. The proceeds actually derived by appellant at the March 1963 sale, made without restriction, become irrelevant.[6]

This leaves for the Referee to determine whether appellant was able to obtain a buyer who would have bought the stock and at what price pursuant to the transferability restrictions in ¶ 10 of the contract, notwithstanding its deflated value, but for the delay in the delivery of the stock; and the difference in such price between January 1962 and October 11, 1962, if any exists, constitutes the allowable damage.

Affirmed in part and reversed in part, and remanded with instructions to determine proper damages, if any.

6. Appellant was enabled to sell on the open market on March 21, 1963, only because Tower voluntarily deleted the investment legend, thus removing restrictions on the transferability of the stock.