In the Matter of Richard Dudley MITCH-
ELL and Ruby Della Donelson, d/b/a
Marby's Style Shop, a Partnership,
Bankrupts,

v.

**SHEPHERD MALL STATE BANK, Small Business Administration, Respondents.**

**No. BK–69–1350.**

United States District Court,
W. D. Oklahoma,
Bankruptcy Division.

March 23, 1971.

Luttrell, Pendarvis & Rawlinson, Benedum & Benedum, Norman, Okl., for bankrupts.

Norman Reynolds, Oklahoma City, Okl., for Trustee in Bankruptcy.

Dick Tourtellotte, Oklahoma City, Okl., for Shepherd Mall St. Bank.

Billy B. Bowe, Oklahoma City, Okl., for Small Business Administration.

## MEMORANDUM

DAUGHERTY, District Judge.

The question for review certified by the Referee is as follows: "Under the testimony and evidence did the Referee err in deciding and in holding the Security Agreement in question in this case was valid and covered equipment, inventory, accounts receivable, contract rights and proceeds in the bankrupt's stores at Moore and Edmond, Oklahoma, to the extent of the unpaid balance on the note now held by the Small Business Administration."

The bankrupts executed a Security Agreement in favor of the Shepherd Mall State Bank, which subsequently assigned the principal note secured by the Agreement to the Small Business Administration after the Petition in Bankruptcy was filed herein.

The relevant portions of the Security Agreement are set out below: (Under-

lined portions indicate typewritten insertions on the form Agreement)

"B. AGREEMENT

Subject to the applicable terms of this security agreement, debtor grants to Secured Party, * * * a security interest in the collateral to secure the payment of the obligation.

\* \* \* \* \*

D. COLLATERAL

1. The security interest is granted in the following collateral:

a. Describe collateral. * * * (2) * * *; if collateral to be enumerated below is not then all in one location and at the address given above, segregate by location and give the address thereof.

\* \* \* \* \*

(4) If insufficient space to list all collateral, continue on separate sheets affixed hereto and signed for purposes of identification.

*See* EQUIPMENT LIST *attached hereto and made a part hereof, describing equipment, furniture and fixtures located at Moore and Edmond stores.*

(Description continued on 2 pages attached hereto).

2. Classify goods under (one or more of) the following Uniform Commercial Code categories:

☐ Consumer Goods
☒ Equipment (business use)
☒ Inventory
☒ Accounts Receivable
☒ Contract Rights

\* \* \* \* \*

4. If any of the collateral is accounts or contract rights, give the location of the office where the records concerning them are kept (if other than debtor's address in Item A2): * * * ".

As can be seen from the material quoted above the collateral described ("equipment, furniture and fixtures") is not the same as the collateral classified. The list describing the "equipment, furniture and fixtures" makes no reference to either "Inventory," "Accounts Receivable," or "Contract Rights."

Financing statements were filed at both Oklahoma County and Cleveland County at a proper time. These statements recited that they covered "All machinery and equipment, furniture and fixtures, inventory and proceeds, accounts receivable and contract rights."

Over the objections of the Trustee, the Referee found there was sufficient uncertainty and ambiguity in the Security Agreement to justify the introduction of parol evidence to clarify the intent of the parties concerning the inventory, accounts receivable, and contract rights. This evidence consists solely of the testimony of the bank's vice president. He stated that it was the intention of the bank "to take as security the inventory, the equipment, accounts receivable, and contract rights inventory." (P. 12 of Transcript of Testimony taken on tenth day of November, 1969). He was not permitted to testify concerning the intention of the bankrupts. (P. 13 of said Transcript). Based on this testimony, the Referee found "a clear intention of the parties that Shepherd Mall State Bank has a security interest in equipment, inventory, accounts receivable, contract rights and proceeds thereof at the Moore and Edmond stores." (Finding of Fact No. 8). The Finding did not apparently extend to a third store at Chickasha.

■■ The financing statement does not ordinarily create a security interest. See Mid-Eastern Electronics Inc., v. First National Bank, 380 F.2d 355, (4 C.A. 1967); American Card Company v. H. M. H. Company, 97 R.I. 59, 196 A.2d 150; Kaiser Aluminum & Chemical Sales, Inc. v. Hurst, 176 N.W.2d 166, (Iowa 1970); Central Arkansas Milk Producers Association v. Arnold, 239 Ark. 799, 394 S.W. 2d 126, (1965). The Security Agreement

creates and defines the security interest. Although the financial statement herein includes inventory and proceeds, accounts receivable and contract rights, the bank has no security interest therein unless they are covered in the Security Agreement. The description contained in a financing statement may as to debtor's purchasers and other creditors, have the effect of restricting as to such other purchasers and creditors the security interest created in the Security Agreement, but it cannot have the effect of enlarging it. In re Platt, 257 F.Supp. 478 (U.S.D.C.E.D.Pa.1966, Referee's Opinion).

There is a distinction to be observed between the description provisions of financing statements and security agreements. 12A Okl.St.Ann. Sec. 9–203, provides that the security agreement must be in writing and contain a "description of the collateral." 12A Okl.St.Ann. Sec. 9–402, provides that a financing statement must among other things contain "a statement indicating the types, or describing the items, of collateral." Gilmore, Security Interest in Personal Property, Sec. 11.4, p. 347, states:

> "There is a sensible reason for the distinction between security agreement and financing statement. Under the notice filing system which Article 9 adopts, the document placed on record need be only a skeletonic statement that the parties intend to engage in future transactions: * * * Normally the parties doing a secured transaction will evidence their agreement in a written document which will contain a great deal more than the notice required in the Sec. 9–402 financing statement."

■ The formal requisites (writing and description) of Sec. 9–203, are not only conditions for the enforceability of a security interest against third parties, they are in the nature of Statute of Frauds. UCC, Sec. 9–203, Comment No. 5.

Paragraph D1 of the security agreement quoted above which purports to describe the collateral is unambiguous. 12A Okl.St.Ann. Sec. 9–110, which applies to the entire article on secured transactions provides, "Any description of personal property or real estate is sufficient whether or not it is specific, if it reasonably identifies what is described." However, it is not the sufficiency of the description which is questioned. The language of this paragraph is clear as to what is described.

■ It is the statement contained in Paragraph D2 of the security agreement which it is contended extends the security interest to the inventory, accounts receivable, and contract rights, or at least so clouds the intent of the parties that it is necessary and proper to resort to parol evidence. This printed paragraph attempts the impossible under the Code. It purports to classify accounts receivable and contract rights as goods. Goods, however, include only "consumer goods," "equipment," "farm products," and "inventory." 12A Okl.St.Ann. Sec. 9–109. Accounts receivable and contract rights are otherwise defined in 12A Okl.St.Ann. Sec. 9–106.

■■ Classifications under the Code are important to determine such questions as the place of filing, etc. (See UCC, Sec. 9–109, Comment No. 1; Sec. 9–106, Comment First Paragraph; Sec. 9–103, Comments 1 and 2; Sec. 9–102, Comment No. 5; Sec. 9–401, Comments No. 3 and 4). It is, however, not among the purposes of classification to describe or create the security interest. Further, it would seem that classification is not ordinarily a matter of intent of the parties, but a question of law applied to the facts as they exist.

■ The printed form invited a misclassification, but should this error be permitted to render an otherwise unambiguous description of collateral uncertain? We think not. In In re Radabaugh, 4 UCC Reporting Service 355, (U.S.D.C.S.D.Ohio 1966, Referee's Opinion), a question was presented whether certain insurance premiums which had been returned were covered by the se-

curity agreement. There as here the description of the collateral in the appropriate paragraph of the agreement is unambiguous; however, certain language in the provisions relating to the creditor's rights after default provided a basis for asserting the premiums were included. The referee concluded:

"A long and complex security agreement, containing many covenants or contractual provisions elaborating in great detail the rights of the secured party after default, as herein, should not have the purposes or effect of concealing a description of the collateral. The hazard of such a device is particularly obvious under the facts in this case, where the collateral is defined in a clause which bears a designation in large capital letters. Under such a form, all of the collateral should be described and included therein, and anyone who examines the agreement should not be required to read and interpret all the fine print at his peril. He would only be interested in the collateral as clearly designated by the form itself. Remedy upon default should not be considered a part of the collateral, as under the security agreement involved."

It could as well be said in the instant case that a third party would only be interested in the collateral as clearly designated by the form itself. He would not be concerned with the classification made by the parties, and should not be required to read and interpret the paragraph which purports to deal only with classification.

Although some support for the referee's position in receiving parol evidence may be found in the cases of In re Drane, 202 F.Supp. 221, (D.C.Ky. 1962), and In re Platt, 257 F.Supp. 478, (D.C.Pa.1968), they are not persuasive. In the Drane case, the court was considering the sufficiency of a description of furniture in a security agreement. In sustaining the particular description, the court indicated that a description is sufficient if, assisted by external evidence that does not add to or contradict the terms of the contract, a third party would be able to identify the particular items described. The case did not involve the omission to describe an entire class or type of property as here and further, the "external evidence" referred to consisted of objective evidence such as address of mortgagor and location at which collateral kept, and not the subjective evidence of a personal statement by a party concerning his intent. In short, the court found a third party could go to the address of the mortgagor which was stated in the agreement where the collateral was to be kept and identify the collateral described: "1–2 pc. living room suite, wine," etc.

In the Platt case, the bankrupt had given the secured party three notes, but the referee made no findings as to whether the parties intended two renewal notes to be secured by the collateral, and the court remanded the cause to the referee to take evidence on this issue. The court was not in that case concerned with an inadequate or ambiguous description of collateral and in fact the uncertainty related to events occurring subsequent to the execution of the security agreement.

A more pertinent case involving a trustee in bankruptcy in a situation in pre-code law similar to the present case is Brown v. Camp, 275 F. 612, 613, in which the Fifth Circuit said:

"John E. Brown executed to his son, the petitioner herein, a mortgage note, the description of the property mortgaged being:

'a sufficient amount of lumber, shingles, brick, roofing, and cement in my possession.'

"Thereafter the said John E. Brown was adjudicated a bankrupt. Petitioner sought to set up and establish the lien of the mortgage which the referee declined to permit him to do. The action of the referee was confirmed by the district judge. The ground upon which a mortgage lien was held not to exist was that the description of the property attempted to

be mortgaged was too vague, uncertain, and indefinite. *The referee also declined to allow parol evidence upon the question of what property was intended by the mortgagor to be described.*

"Under the amendment of 1910 (Comp. St., § 9631), a trustee in bankruptcy is vested with the rights and remedies of a creditor holding a lien by legal or equitable proceedings. This mortgage would have been void as against a judgment creditor. Reynolds v. Tipton Guano Co., * * * 92 S.E. 389, and cases there cited. We are of the opinion that a 'sufficient amount' is not equivalent to all of the mortgagor's property attempted to be described in the mortgage. The mortgage does not purport to cover all the property, but only a portion less than the whole of it. The fact that several articles were mentioned only serves to make the indefiniteness more pronounced.

"Whatever the rule is as to admissibility of parol evidence of the intention of the parties, mortgagor and mortgagee, where the rights of third parties are not involved, their understanding except as expressed in the mortgage, could have no effect upon the power of the trustee in bankruptcy to exert the lien secured to a creditor or innocent purchaser * * *

"The petition to superintend and revise is denied." (Emphasis added).

In a more recent case arising under the Code, the security agreement under review had described the collateral as "accounts and notes receivable and inventories of raw materials, work in process and finished goods wherever located." The inventory on hand as of the date of the bankruptcy had been acquired after the date of the security agreement. The referee in bankruptcy ruled that parol evidence was not admissible to show an intent of the parties to include after-acquired property in the collateral. In re Taylored Products, Inc.,

5 UCC Reporting Service 286, (Mich. 1968).

We conclude that the Referee in this case should not have received the parol evidence in determining the collateral encompassed by the Security Agreement. Therefore, the question certified must be answered in the affirmative. The Security Agreement given to Shepherd Mall State Bank covered only the equipment specifically enumerated in the attached list, and the security interest did not extend to the accounts receivable, inventory, and contract rights.