**In re SIMS OFFICE SUPPLY, INC., Debtor.**

**SIMS OFFICE SUPPLY, INC., Plaintiff,**

**v.**

**KA–D–KA, INC., Defendant.**

**Bankruptcy No. 87–967–BKC–6P1.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Feb. 9, 1988.

David R. McFarlin, Orlando, Fla., for plaintiff.

Robert L. Young, Orlando, Fla., for defendant.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding is predicated upon complaint seeking to determine the extent of a lien against property of the estate. The plaintiff has filed a motion for summary judgment which raises the following issue:

Does the failure to expressly include an "after-acquired property" clause in a security agreement preclude the Court from finding that the parties may have intended that all subsequently acquired inventory is subject to such security interest?

For the following reasons, the Court concludes that it does not.

### FACTS

On May 15, 1984, plaintiff, then known as Orlando Florco, Inc., and defendant, formerly known as Sims Office Supply, Inc., entered into an Asset Sale and Purchase Agreement. Pursuant to that agreement, plaintiff and defendant entered into a security agreement dated May 1, 1984, which purports to give defendant a security interest in:

(a) all equipment sold to the [plaintiff] by the [defendant] in accordance with the Purchase Agreement;

(b) all inventory sold to the [plaintiff] by the [defendant] in accordance with the Purchase Agreement; and

(c) any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper whether or not it has been earned by performance and sold to the [plaintiff] by the [defendant] in accordance with the Purchase Agreement.

A UCC–1 Financing Statement executed in conjunction with the security agreement states that defendant holds a security interest in all of the [plaintiff's] accounts receivable, equipment and inventory, whether now owned or hereafter acquired.

On March 16, 1987, an involuntary petition was filed against Sims Office Supply, Inc., and on April 1, 1987, an order for

relief was entered under Chapter 7 of the Bankruptcy Code. The case was later converted to one arising under Chapter 11 and in accordance with that order, the plaintiff debtor was authorized to operate its business as debtor-in-possession. 11 U.S.C. § 1108.

This adversary proceeding was commenced to determine the extent of a lien in inventory now owned by the plaintiff debtor. The plaintiff filed a motion for summary judgment arguing that the failure to include an after-acquired property clause in the security agreement limits the defendant's lien to inventory on hand when the Asset Sale and Purchase Agreement was signed.

The defendant opposes the motion and has sought to introduce as evidence of the parties' intent the following documents:

(1) The affidavit of Davie E. Sims, as President of Ka–D–Ka, Inc., in which he states that it was clearly understood between the parties that the sale of the business was to be secured by all presently owned and subsequently acquired assets;

(2) A UCC–1 financing statement;

(3) A subordination agreement;

(4) Ka–D–Ka's proof of claim.

The plaintiff strenuously opposes such evidence as a violation of the parol evidence rule.

## DISCUSSION

That the parties could have drafted a contract which expressly provides for a security interest in after-acquired property cannot be seriously disputed. Indeed, section 679.204(1), Florida Statutes (UCC Section 9–204), provides that a "security agreement may provide" that collateral include after-acquired property. Subsection 2 of that same section also refers to an "after-acquired property" clause as does Official Comment No. 1 to Uniform Commercial Code Section 9–204 which refers to "a security interest arising by virtue of an after-acquired property clause."

Plaintiff argues that these statutes create a mandatory requirement that a provision for after-acquired property be expressly included in the security agreement in order for such a security interest to arise. It further suggests that the failure to include such a clause in the security agreement limits the scope of the security interest to collateral existing at the time the security interest is granted. There is some support for this position.

For instance, in *In re Taylored Products, Inc.,* 5 UCC Rep.Serv. 286 (Bkrptcy. W.D.Mich.1968), the Court decided that the inclusion of an after-acquired property clause in a security agreement is compulsory under UCC Section 9–204. Thus, where the security agreement contained no reference to such an agreement, the Court held that the creditor had no security interest in inventory which had been acquired after the date of the security agreement. See also, *Mitchell v. Shepherd Mall State Bank,* 324 F.Supp. 1029 (W.D.Okla.1971); *Dubay v. Williams,* 417 F.2d 1277 (9th Cir.1969); and *Evans Products, Inc. v. Jorgensen,* 245 Or. 362, 421 P.2d 978 (1966).

A similar result was reached in *Idaho Bank & Trust Co. v. Cargill, Inc.,* 105 Idaho 83, 665 P.2d 1093, 1098 (App.1983), where the Court held that an after-acquired property clause is necessary to provide "definiteness and clarity" in the agreement, thereby protecting the interest of debtors, creditors, purchasers, and other interested persons.

Some commentators who have considered this issue have reached this same conclusion. Says Anderson, "[i]n the absence of an after-acquired property clause, the security interest extends only to the collateral described in the security agreement as being the collateral at the time the agreement was made." 8 Anderson, *Uniform Commercial Code,* Section 9–204:8 at p. 704. See also, 2 Gilmore, *Security Interests,* Section 35.5 (1965).

In King, "Policy Decisions and Security Agreements Under the Uniform Commercial Code," 9 *Wayne L.Rev.* 556, 571 (1963), Professor King notes that a secured creditor "may now cover the shifting inventory and provide for a security interest through a general description and use of a specific

clause concerning after-acquired property." He then adds in a footnote, "the agreement should specifically provide for after-acquired property."

This Court finds that such an interpretation is too narrow. The modern trend suggests that a security interest in after-acquired property is to be automatically presumed when the collateral is described in such generic terms as "accounts receivable," "equipment," or "inventory." For instance, in *American Employers Insurance Co. v. American Security Bank, N.A.*, 747 F.2d 1493, 1501 (D.C.Cir.1984), the Court found that "it is reasonable to read a security agreement granting an interest in all inventory or receivables to include after-acquired inventory or receivables." See also, *Frankel v. Associates Financial Services Co.*, 281 Md. 172, 176, 377 A.2d 1166, 1168 (1977) ("We reject the notion that the security agreement must specifically contain the talisman of 'after-acquired property' or its equivalent"); *In re Nickerson & Nickerson, Inc.*, 329 F.Supp. 93, 96 (D.Neb.) *aff'd*, 452 F.2d 56 (8th Cir.1971). (After-acquired inventory "automatically covered" by the agreement unless otherwise stated.); *In re Fibre Glass Boat Corp.*, 324 F.Supp. 1054, 1056 (S.D.Fla.) *aff'd*, 448 F.2d 781 (5th Cir.1971) (Security agreement that covered inventory by its very nature also covered after-acquired property.).

Our distinguished colleague, Judge Paskay, has had occasion to consider this issue and supports this view. See, *In re Page*, 16 UCC Rep.Serv. 501 (Bkrptcy.M.D.Fla. 1974). In that case, the debtor granted a mortgage lien upon "all inventory and equipment located at 8002 N. Amelia Avenue, Tampa, Florida, which was in its possession, custody, and control at the time of the execution of the mortgage." The Court noted that neither the mortgage nor the financing statement mentioned any after-acquired property, and appeared to have limited the collateral to inventory and equipment owned by the debtor at the time of the execution of the mortgage. The mortgage, however, required the debtor to maintain a certain level of value of inventory and to furnish an inventory report periodically at the request of the secured creditor. *Id.* at 502.

The trustee contended that the documents were clear and unambiguous, and that no parol evidence could be considered in order to determine the intent of the parties. *Id.* at 504. That argument was rejected when the Court held:

The fallacy of this argument should be evident if one considers the nature and the character of the collateral. The bankrupt was engaged in a mercantile business selling these inventory items at retail. Needless to say, any reasonable secured party would be fully aware that this type of business presupposes a constant change in the inventory. Therefore, it is obviously unreasonable to assume that anyone would have received or acquired or intended to acquire a security interest in an inventory with the rigid limitation that it should be limited to the same items which made up the inventory on the date the document was executed.

*Id.* at 504.

The Southern District of Florida has had its opportunity to consider the matter and has joined in this conclusion. See, *In re Fibre Glass Boat Corp.*, 324 F.Supp. 1054, 1056 [9 UCC Rep.Serv. 118] (D.S.D.Fla. 1971) *aff'd*, 448 F.2d 781 (5th Cir.1971). Says the Court:

Surely the creditor would not enter into a financing arrangement secured by collateral fixed on a particular date when the collateral by its nature would be constantly changing. It would be straining the meaning of the word to find that inventory meant only that on hand on the particular day the contract was executed and if a can of paint or the like was used, the collateral would be diminished to that extent.

324 F.Supp. at 1056.

Some Courts have applied a "reasonable man" test to this problem and have determined that the intent of the parties ought to be gathered from all the facts and circumstances surrounding the case; that is, if a reasonable man looking at the entire security agreement and financing statement would recognize that the parties in-

tended to secure after-acquired inventory. *In re Gary & Connie Jones Drugs, Inc.*, 35 B.R. 608 (Bkrptcy.D.Kan.1983).

■ This Court concludes that the failure to specifically include an after-acquired property clause in the security agreement does not limit the secured party's security interest to that collateral on hand when the transaction was completed. In furtherance of prevailing and accepted commercial lending practices, the Court finds that a provision for after-acquired property is to be automatically presumed unless there is some indication that the parties intended a different result.

Nonetheless, the plaintiff has argued that the parol evidence rule precludes the consideration of extrinsic evidence to determine whether the parties intended to include after-acquired property in the Security Agreement.

■ The rule has its genesis in common law and holds that parol evidence is inadmissible to modify, alter, or affect the construction of a written contract expressed in clear and unambiguous terms. *Oglesby v. Allen*, 408 F.2d 1154 (5th Cir. 1969); *City of St. Petersburg v. International Association of Firefighters Local No. 747*, 317 So.2d 788 (Fla. 2d DCA 1975). All classes of contractual writings are within the scope of the parol evidence rule, including security agreements. Thus, when a paragraph in a security agreement which describes the collateral is unambiguous, parol evidence is inadmissible to determine what collateral was encompassed by the security agreement. *Mitchell v. Shepherd Mall State Bank*, 324 F.Supp. 1029, 1030 (W.D.Okla.1971); *In re Taylored Products, Inc.*, 5 UCC Rep.Serv. 286 at 287 (W.D.Mich.1968).

■ If this document was expressed in clear and unambiguous terms, the Court would have no problem accepting plaintiff's argument. However, it is not, and therefore the Court sees no such limitation upon its inquiry, for within the rule lies its own exception: The parol evidence rule has no application where the language is ambiguous or unclear.

■ In this case, ambiguity abounds throughout the security agreement:

(1) Section 1 defines inventory as "all inventory sold to the [plaintiff] by [defendant] in accordance with the Purchase Agreement."

(2) Section 3 provides that a security interest is granted in "each and all of the collateral."

(3) Section 2 defines collateral as *"all* Accounts, Equipment and Inventory." (emphasis added)

(4) In Section 4, plaintiff covenanted:

(a) Not to sell, transfer, lease or otherwise dispose of collateral or any interest therein or offer to do so without the prior written consent of the Secured Creditor ... however, that as long as the Debtor is not in default under this Security Agreement, it may (i) sell its Inventory in the ordinary course of its business and (ii) replace its Equipment due to depreciation and obsolescence.

(5) Section 4(k) grants the defendant the right to inspect and examine the collateral and to make schedules and listings thereof.

(6) Section 9 of the Security Agreement provides that all the terms of the Security Agreement will remain in effect until the promissory notes are paid in full.

(7) Section 16 of the Security Agreement expressly provides plaintiff the right to substitute new collateral and to obtain a release of collateral from the security interest under the Security Agreement provided that the value and type of new collateral is comparable to or greater than that of the collateral being released.

When one considers the effect these provisions have on the agreement, it is unclear whether the parties truly intended the security interest to cover after-acquired inventory. For instance, the fact that the debtor was authorized to sell inventory in the ordinary course of business and to replace its equipment tends to suggest that the parties contemplated that the assets being sold would be replaced by other col-

lateral. Otherwise, the debt would eventually become unsecured. Likewise, the fact that the creditor was given the authority to inspect the collateral and to make schedules and lists seems to support the conclusion that the security interest covers all subsequently acquired assets, otherwise, the right to inspect and make lists would be totally unnecessary.

The fact that the terms of the Security Agreement were to remain in effect until the promissory notes were paid in full also adds to the confusion. This provision would seem to indicate that the parties intended the security interest to continue in all future assets rather than terminating once the collateral was depleted. Such issues, of course, will remain for trial.

Furthermore, the Court finds it somewhat inconsistent for the parties to include a provision relating to the substitution of collateral had they not contemplated that sufficient collateral would be maintained to secure the debt. These inconsistencies lead the Court to declare the Security Agreement ambiguous.

■ Plaintiff would have us limit the inquiry to Section 1 of the Security Agreement. The Court does not believe this is the proper inquiry; rather, the whole document itself should be considered and in light of the inconsistencies mentioned above, the Court finds sufficient ambiguity and questions of fact remaining to preclude the granting of plaintiff's motion for summary judgment. The Court finds it unnecessary to address the admissibility of the other documents tendered by the defendant other than to note that the UCC-1 Financing Statement does expressly provide for a security in all of the plaintiff's accounts receivable, equipment and inventory, whether now owned or hereafter acquired.

While it is generally understood that such a description contained in the financing statement should not be used to enlarge the terms of the security interest contained in the security agreement, the Court, having found that the parol evidence rule does not apply, finds this document to be an important indication that a genuine issue of fact remains to be tried.

## CONCLUSION

In accordance with the findings outlined above, the plaintiff's motion for summary judgment will be denied in a separate order. The case will proceed to trial where a full evidentiary hearing can be held dealing with, among other matters, the issue of whether the parties intended the security interest to cover all after-acquired inventory.