831 P.2d 976

**Edward J. KUEMMERLE and Lora L. Kuemmerle, Plaintiffs-Appellants,**

v.

**UNITED NEW MEXICO BANK AT ROS-WELL, N.A., a national banking association, Defendant-Appellee.**

No. 19836.

Supreme Court of New Mexico.

May 5, 1992.

Cusack, Jaramillo & Associates, Timothy J. Cusack, Roswell, for plaintiffs-appellants.

Hinkle, Cox, Eaton, Coffield & Hensley, Stuart D. Shanor and Gregory S. Wheeler, Roswell, for defendant-appellee.

## OPINION

BACA, Justice.

Plaintiffs-appellants Edward and Lora Kuemmerle appeal the judgment of the trial court in favor of defendant-appellee United New Mexico Bank at Roswell (the "Bank"). Appellants raise three issues for our consideration: (1) Whether the Bank's security interest in the inventory attached and was perfected prior to the attachment of appellants' landlords' lien; (2) whether the Bank has a valid purchase money security interest, and, if so, whether the Chumley lease subordinates appellants' landlords' lien to the Bank's security interest; and (3) whether the landlords' lien waiver executed by Mr. Kuemmerle is effective against both appellants. We affirm.

### I

In January of 1987, appellants leased a building to certain individuals, the Chumleys and Pattons (the "Chumleys"), to operate a grocery store, the Sunset Market (the "Market"). The Chumleys secured financing for their business from the Bank and gave the Bank a promissory note and security interest in furniture, fixtures, equipment, and inventory. The lease agreement (the "Chumley lease") contained a term that subordinated appellants' landlords' lien to the rights of any purchase money security interest holder "in trade fixtures and any other personal property and equipment installed by [the Chumleys] in the leased premises * * * *" In addition, appellant Mr. Kuemmerle, but not Mrs. Kuemmerle, signed a landlords' lien waiver in favor of the Bank.

In January of 1988, the Chumleys negotiated to sell the Market to the Daniels and the Daniels negotiated with the Bank to secure financing for their purchase of the business. In anticipation of the loan closing, the Bank requested that the Daniels obtain the Kuemmerles' signatures on a lien waiver form. On February 3, the lien waiver form was returned to the Bank with a signature that purported to be the signature of Mr. Kuemmerle. The next day, the Bank and the Daniels closed their loan transaction, which was evidenced by two promissory notes in the amounts of $81,062.63 and $20,000.00. The notes provided that the purchase money nature of the loans would not be affected by extension, renewal, consolidation, or refinancing of the loans. To secure the larger note, the Daniels executed a security agreement in favor of the Bank that created a security interest in the furniture, fixtures, equipment owned or subsequently acquired, and in the inventory and proceeds from such inventory. On February 12, the Chumleys and the Daniels consummated the sale of the Market. The Bank filed the financing statements in Chaves County on March 31, and with the Secretary of State on April 6. The Daniels operated the Market without an agreement with appellants from the date of their purchase of the Market until April 8, when the Daniels and appellants entered into an assumption agreement whereby the Daniels assumed the Chumley lease with the Kuemmerles with minor modifications.

The Daniels ordered their inventory from a wholesaler who would segregate the Daniels' order at the warehouse, identify the goods as the Daniels, and require payment from the Daniels one week prior to shipment. The inventory was sold and replaced approximately every forty days.

The Daniels' loans were consolidated and renewed by the Bank on May 11 and the Bank accepted additional collateral, changed the interest rate to current market rate, and extended further credit to the Daniels. The Bank did not file new financing statements in conjunction with the refinancing. In July, the Daniels failed to pay

the rent due to appellants and failed to provide insurance as required by the lease. The Daniels were evicted from the premises and appellants obtained a default judgment against the Daniels for the back rent and insurance payments. At the time of the eviction, the Daniels owed the Bank $121,210.21 on the loans. Appellants conceded that, under the lease assumption agreement, their landlords' lien was subordinated to the Bank's purchase money security interest in the furniture, fixtures, and equipment. However, appellants contended that their landlords' lien was prior to the Bank's security interest in the inventory. The Bank and appellants agreed that the inventory should be sold by the Bank and the proceeds held until the respective priority rights could be determined. The Bank liquidated these assets and retained $38,966.47 in escrow and appellants instituted the instant action for a declaratory judgment concerning the parties' priorities to the funds in escrow.

The trial court found that the Bank was entitled to the proceeds on three different theories, any one of which, if correct, would support affirmance. First, the trial court concluded that the Bank had a security interest in the inventory purchased by the Daniels after April 6 and that this security interest attached before the inventory was delivered to the premises. Because the appellants' landlords' lien could not attach to the inventory until the inventory reached the premises, the trial court concluded that the Bank's security interest was superior to appellants' landlords' lien. Second, the trial court found that the subordination clause in the Chumley lease subordinated appellants' lien to the Bank's purchase money security interest. Third, the trial court found that the lien waivers executed by Mr. Kuemmerle were effective against both appellants. Appellants disagreed and this appeal ensued.

## II

■ New Mexico recognizes that the priority between a landlords' lien and an Article 9 security interest is not covered by the statutory provisions of the Uniform Commercial Code—Secured Transactions, NMSA 1978, §§ 55–9–101 to –507 (Repl.Pamp.1987 & Cum.Supp.1991). *National Inv. Trust v. First Nat'l Bank in Albuquerque*, 88 N.M. 514, 516, 543 P.2d 482, 484 (1975). In such a case, the common law doctrine of "first in time, first in right" controls the priorities between the parties. *See id.* at 515, 543 P.2d at 483. Thus, the critical inquiry in this appeal is whether the Bank's security interest in the Daniels' inventory attached prior to the attachment of appellants' landlords' lien. *See id.*

### A

Citing *Chessport Millworks, Inc. v. Solie*, 86 N.M. 265, 522 P.2d 812 (Ct.App. 1974), and *Gathman v. First American Indian Land, Inc.*, 74 N.M. 729, 398 P.2d 57 (1965), appellants contend that their landlords' lien attached when they agreed to lease the building to the Chumleys in January of 1987, and, by virtue of their assumption agreement with the Daniels, their lien continued to be valid. In the alternative, appellants contend that their landlords' lien attached on February 3, 1988, because the assumption agreement, entered on April 8, with the Daniels was back dated and obligated the Daniels under the lease from the beginning of February. In either case, appellants conclude that their landlords' lien attached before the Bank's security interest was perfected by the Bank's filing of the financing statement on April 6.

■ By statute, a landlord is given a lien "on the property of their tenants which remains in the house rented, for the rent due, or to become due by the terms of any lease * * * *" NMSA 1978, § 48–3–5 (Repl.Pamp.1987). In general, a landlords' lien attaches at the beginning of the tenancy for any rent that will come due during the tenancy. *National Inv. Trust*, 88 N.M. at 515, 543 P.2d at 483. However, as *National Investment Trust* makes clear, the lien does not attach to the tenant's property until after the property is brought onto the premises. *Id.* As a consequence, appellants' landlords' lien in the Daniels' in-

ventory could not have attached until the inventory was delivered to the Market.

### B

The Bank contends that its security interest in the Daniels' inventory was perfected on April 6 when it filed its financing statement and that appellants' landlords' lien did not attach until appellants and the Daniels entered into the lease agreement on April 8. In the alternative, the Bank argues that its security interest attached and was perfected when the inventory was segregated for shipment by the Daniels' supplier and that appellants' landlords' lien did not attach until the inventory reached the Market. Under either theory, the Bank concludes that, because its security interest attached before appellants' landlords' lien, it has priority over the proceeds of the sale.

■ A security interest attaches when the last of three events occurs: (1) the debtor signs a security agreement; (2) the debtor is given value; and (3) the debtor has rights in the collateral. NMSA 1978, § 55–9–203 (1) & (2) (Repl.Pamp.1987). Under NMSA 1978, Sections 55–9–302 & –303 (Repl.Pamp.1987), a security interest is perfected only after it attaches and a financing statement has been filed. If the financing statement is filed before the security interest attaches, the security interest is perfected upon attachment. NMSA 1978, § 55–9–303.

■ In the instant case, the Daniels signed a security agreement on February 4, 1988, and on the same day, the Bank extended credit to the Daniels, thereby giving value to the debtors. *See* NMSA 1978, § 55–1–201(44) (Cum.Supp.1991). However, the Bank's security interest could not attach on that day because the Daniels did not have rights in the collateral. At the earliest, the Bank's security interest attached to the inventory on February 12, when the Daniels and the Chumleys consummated the sale of the Market and the Daniels gained rights in the inventory. *See* James J. White & Robert S. Summers, *Uni-*

*form Commercial Code* § 22–6 (3d ed. 1988). This security interest as to the inventory in the Market on February 12 was perfected when the Bank filed the financing statement on April 6.

While the Bank's security interest in the initial inventory attached on February 12 and was perfected on April 6, evidence presented at trial indicates that the inventory was sold and replaced approximately every forty days. Appellants argue that the Bank's security interest attached only to the initial inventory and not to after-acquired inventory because the financing statement does not mention after-acquired inventory.[1] Appellants conclude that because the security interest does not include after-acquired inventory, they are entitled to the disputed funds by virtue of their landlords' lien. The Bank, however, argues that the financing statement was intended to cover after-acquired inventory and that the security interest in such inventory attached and was perfected on April 6 when the financing statement regarding the initial inventory was filed. In the alternative, the Bank argues that its security interest attached when the Daniels gained rights in the collateral, *i.e.*, when the Daniels' supplier segregated the inventory for shipment, and that appellants' landlords' lien did not attach until the same inventory was delivered to the Market. In either case, the Bank concludes that its security interest attached before appellants' landlords' lien attached, and, thus, its security interest has priority over appellants' landlords' lien.

While we have never decided whether a clause granting a security interest in inventory also covers after-acquired inventory, other courts have addressed this issue. A majority of the courts addressing this issue have concluded that a security interest in inventory also includes after-acquired inventory unless the security agreement clearly indicates the contrary result is intended. *See In re McBee*, 714 F.2d 1316, 1331 (5th Cir.1983) (applying Texas law);

---

1. In pertinent part, the financing statement read: "This financing statement covers the following types (or items) of property: * * * Entire inventory of merchandise together with all proceeds derived therefrom. Said * * * inventory is located at [the Market]."

*American Employers Ins. Co. v. American Sec. Bank, N.A.*, 747 F.2d 1493, 1501 (D.C.Cir.1984) (applying Maryland law); *In re Page*, 16 U.C.C.Rep.Serv. (Callaghan) 501, 504–05 (Bankr.M.D.Fla.1974); *In re Nickerson & Nickerson, Inc.*, 329 F.Supp. 93, 96 (D.Neb.), *aff'd.*, 452 F.2d 56 (8th Cir.1971); *In re Sims Office Supply, Inc.*, 83 B.R. 69, 73 (Bankr.M.D.Fla.1988); *In re American Family Mktg. Corp.*, 92 B.R. 952, 953 (Bankr.M.D.Fla.1988); *In re Gary & Connie Jones Drugs, Inc.*, 35 B.R. 608, 611 (Bankr.D.Kan.1983); *Get It Kwik of Am., Inc. v. First Alabama Bank of Huntsville, N.A.*, 361 So.2d 568, 573 (Ala. Civ.App.1978); *Frankel v. Associates Fin. Svcs. Co.*, 281 Md. 172, 377 A.2d 1166, 1168 (1977). These courts often apply an objective test to determine whether the security agreement contemplated after-acquired inventory and a subjective test to determine whether the parties intended to include after-acquired inventory in their agreement. *See, e.g., American Employers Ins. Co.*, 747 F.2d at 1500 (citing James J. White & Robert S. Summers, *Handbook of the Law of the Uniform Commercial Code* 912 (2d ed. 1980)). However, some courts reject this approach and require an explicit after-acquired clause to appear in the security agreement. *See In re Middle Atl. Stud Welding Co.*, 503 F.2d 1133, 1136 (3d Cir. 1974) (security interest in accounts does not cover after-acquired accounts); *In re Balcain Equip. Co.*, 80 B.R. 461, 462 (Bankr. C.D.Ill.1987) (security interest in inventory does not cover after-acquired inventory); *In re Nightway Transp. Co.*, 96 B.R. 854, 859 (Bankr.N.D.Ill.1989) (security interest in accounts receivable does not cover after-acquired accounts receivable).

■ We agree with the reasoning of those courts that find that the term "inventory" in a security agreement contemplates not only existing inventory but also after-acquired inventory. The Code allows the use of security interests in after-acquired property to secure an obligation. *See* NMSA 1978, § 55–9–204 (Repl.Pamp.1987). Inventory is defined in the Code as goods that "are held by a person who holds them for sale * * *." NMSA 1978, § 55–9–109(4) (Repl.Pamp.1987). This definition of inventory anticipates that the inventory will change from day to day in the normal operation of a business such as a retail store. In rejecting an argument similar to that of appellants' argument in this case, the court in *Get It Kwik of America* stated:

> Needless to say, any reasonable secured party would be fully aware that [a retail sales] business presupposes a constant change in the inventory. Therefore, it is obviously unreasonable to assume that anyone would have received or acquired or intended to acquire a security interest in an inventory with the rigid limitation that it should be limited to the same items which made up the inventory on the date the document was executed.

> This approach is consistent with the general liberal philosophy of the U.C.C. and is certainly the prevailing and accepted commercial practice in financing retail merchandising businesses.

361 So.2d at 573–74 (quoting *In re Page*, 16 U.C.C.Rep.Serv. (Callaghan) 501, 504 (Bankr.M.D.Fla.1974)). A description of collateral in a financing statement "is sufficient whether or not it is specific if it reasonably identifies what is described." NMSA 1978, § 55–9–110 (Repl.Pamp.1987). The description of collateral in the financing statement in the instant case as the "entire inventory of merchandise together with all proceeds derived therefrom" is sufficient to give another creditor notice of the security interest in after-acquired inventory. *See American Employers Ins. Co.*, 747 F.2d at 1500–01. Thus, viewed objectively, the term "inventory," by its very nature, includes after-acquired inventory.

■ In addition, the facts of the instant case show that the Daniels and the Bank intended the security interest to cover after-acquired inventory. The note signed by the Daniels stated that the security for the loan was "[a]ll inventory * * * which I own now or may own in the future, which I will sell * * *." Thus, subjectively, the parties to the security agreement intended to have all inventory, including after-acquired inventory, secure the note. Finally, even

though the financing statement as filed did not specifically include after-acquired inventory, we hold that it was sufficient to include after-acquired inventory.

 One final issue that we must address is when the security interest in after-acquired collateral attaches. Under NMSA 1978, Section 55–9–203, a security interest cannot attach until the buyer has rights in the collateral. This, by itself, would indicate that a security interest in after-acquired inventory could not attach until the buyer either has received or paid for the inventory. However, inventory as defined above includes after-acquired inventory. Because inventory is a single entity, we hold that a security interest in after-acquired inventory attaches at the time it attaches to the initial inventory. *See* White & Summers, *supra*, § 22–6. In the instant case, the Bank's security interest in inventory attached on February 12, 1988.[2]

### III

 An application of the principles discussed in Sections II A and B, *supra*, shows that the Bank's security interest in the Daniels' inventory attached on February 12, 1988. Appellants' landlords' lien attached when the inventory was delivered to the Market. Because substantial evidence in the record supports the trial court's finding that the inventory turned over every forty days, *see Kueffer v. Kueffer*, 110 N.M. 10, 12, 791 P.2d 461, 463 (1990), the inventory in the store at the time of foreclosure would have been delivered to the store after the attachment of the Bank's security interest. Therefore, the Bank's security interest attached before appellants' landlords' lien attached and, thus, has priority over appellants' landlords' lien. Because we find that the Bank's security interest in the inventory attached before appellants' landlords' lien

attached, we do not address the other issues raised by appellants.

The judgment of the trial court is AFFIRMED.

IT IS SO ORDERED.

FRANCHINI and FROST, JJ., concur.

---

**2.** Even if we were to hold that a security interest did not attach until the Daniels had rights in the after-acquired inventory, *see National Investment Trust*, 88 N.M. at 515, 543 P.2d at 483, the result in the instant case would be the same. Under that analysis, the Bank's security interest in after-acquired inventory would attach when the Daniels gained rights in the inventory, *i.e.*, when the inventory was segregated for shipment from the Daniels' supplier. Appellants' landlords' lien would not attach to the same inventory until it was delivered to the Market at some later date. Thus, in either case, the Bank's security interest attached before appellants' landlords' lien and the Bank has priority in the proceeds.